IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

COOPER TECHNOLOGIES, INC.,

       Plaintiff,

   v.                                 Civil Case No. 2:06-CV-242

THOMAS & BETTS CORPORATION,

       Defendant.

---

## THOMAS & BETTS CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENTS-IN-SUIT

Alan M. Fisch
afisch@kayescholer.com
Kelly A. Clement
kclement@kayescholer.com
Jason F. Hoffman
jahoffman@kayescholer.com
R. William Sigler
bsigler@kayescholer.com
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile

Samuel F. Baxter
MCKOOL SMITH, P.C.
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 E. Travis, Suite 105
Marshall, Texas  75670
(903) 927-2111 telephone
(903) 927-2622 facsimile

Dated:  April 19, 2007                   Attorneys for Thomas & Betts Corporation

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    A.    Status Of The Instant Litigation.................................................................2

    B.    Commencement of Patent Office Reexamination Proceedings...............2

    C.    Patent Office Rejects All Claims (1 through 30) Of The '791
          Patent...........................................................................................................4

ARGUMENT ....................................................................................................................5

I.      LEGAL STANDARDS GOVERNING ENTRY OF STAY PENDING
        PATENT OFFICE REEXAMINATION OF PATENTS-IN-SUIT ...................5

II.     THIS COURT SHOULD EXERCISE ITS INHERENT POWER TO
        CONTROL ITS DOCKET BY STAYING THIS LITIGATION.......................6

    A.    The Fact That This Case Is In Its Infancy Strongly Favors A Stay
          Pending Reexamination ...........................................................................6

    B.    Entry Of A Stay Will Simplify Claim Construction, Discovery And
          Trial............................................................................................................7

          1.    A stay of the litigation will simplify claim construction ............7

          2.    A stay of the litigation is likely to narrow discovery..................9

          3.    A stay of the litigation will streamline and clarify invalidity
               and infringement issues for trial ...............................................10

    C.    A Stay Of The Litigation Will Not Prejudice Cooper ...........................11

CONCLUSION...............................................................................................................12

## TABLE OF AUTHORITIES

### CASES

*3M Innovative Props. Co. v. DuPont Dow Elastomers LLC,*
No. 03-3364, 2005 U.S. Dist. LEXIS 44877 (D. Minn. Sept. 8, 2005) ............................ 7

*Alloc Inc. v. Unilin Décor,*
No. 03-253, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ................................. 9

*Alza Corp. v. Wyeth and Wyeth Pharm., Inc.,*
No. 9:06cv156, 2006 U.S. Dist. LEXIS 94962 (E.D. Tex. Nov. 2006) ......................... 7, 8

*ASCII Corp. v. STD Entm't USA, Inc.*
844 F. Supp. 1378 (N.D. Cal. 1994) ............................................................................. 5

*Baxa Corp. v. Forhealth Tech., Inc.,*
No. 6:06-cv-0353, 2006 U.S. Dist. LEXIS 28583 (M.D. Fla. May 5, 2006) .................... 7

*Chimie v. PPG Indus., Inc.,*
402 F.3d 1371 (Fed. Cir. 2005).................................................................................... 9

*CNS, Inc. v. Silver Eagle Labs, Inc.,*
No. 04-968, 2004 U.S. Dist. LEXIS 28960 (D. Minn. Nov. 29, 2004) ............................ 7

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
849 F.2d 1430 (Fed. Cir. 1988)................................................................................... 8

*Echostar Techs. Corp. v. TiVo, Inc.,*
No. 5:05cv81, 2006 U.S. Dist. LEXIS 48431 (E.D. Tex. July 14, 2006)................ passim

*Emhart Indus. v. Sankyo Seiki Mfg. Co.,*
3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) ............................................................................ 6

*Ethicon, Inc. v. Quigg,*
849 F.2d 1422 (Fed. Cir. 1988)............................................................................. 5, 10

*Gould v. Control Laser Corp.,*
705 F.2d 1340 (Fed. Cir. 1983).................................................................................. 10

*GPAC, Inc. v. D.W.W. Enters., Inc.,*
144 F.R.D. 60 (D.N.J. 1992)................................................................................. 7, 10

*Guthy-Renker Fitness L.L.C. v. Icon Health and Fitness Inc.,*
48 U.S.P.Q. 2d 1058 (C.D. Cal. 1998)........................................................................ 9

*Hemphill v. Procter & Gamble Co.*,
    258 F. Supp. 2d 410 (D. Md. 2003),
    *aff'd*, 85 F. Appx. 765 (Fed. Cir. 2004) ............................................................ 8

*Middleton, Inc., v. 3M Co.*,
    No. 4:03-CV-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24,
    2004) ............................................................................................................ 9

*Motson v. Franklin Covey Co.*,
    No. 03-1067, 2005 U.S. Dist. LEXIS 340674 (D. N.J. Dec. 16, 2005)............................ 7

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985)........................................................................... 11

*Robert H. Harris Co., Inc. v. Metal Mfg. Co., Inc.*,
    No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991)...................... 7

*Rohm and Haas Co. v. Brotech Corp.*,
    1992 U.S. Dist. LEXIS 3252 (D. Del. Mar. 11, 1992) ....................................... 7

*Softview Computer Prods.* v. *Haworth, Inc.*,
    2000 U.S. Dist. LEXIS 11274 (S.D.N.Y. Aug. 9, 2000)................................... 11

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005)............................................................ 5

*Teradyne, Inc. v. Hewlett-Packard Co.*,
    No. C-91-0344, 1993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993)......................... 7

*ZMI Corp. v. Cardiac Resuscitator Corp.*,
    844 F.2d 1576 (Fed. Cir. 1988)......................................................................... 9

## STATUTES

35 U.S.C. § 314(b)(2) ............................................................................................. 10

35 U.S.C. § 315(b)(1) *et. seq.* .............................................................................. 11

35 U.S.C. § 315(c) .................................................................................................. 11

## REGULATIONS

37 C.F.R. § 1.510.................................................................................................... 2

37 C.F.R. § 1.915.................................................................................................... 2

Defendant Thomas & Betts Corporation ("T&B") submits this memorandum in support of its motion to stay this litigation pending the United States Patent & Trademark Office's ("Patent Office") reexamination of the only two patents-in-suit involved in the litigation, U.S. Patent No. 6,504,103 ("the '103 patent") and U.S. Patent No. 6,984,791 ("the '791 patent").

## PRELIMINARY STATEMENT

The Patent Office has granted T&B's request to reexamine the only two patents involved in this litigation, finding substantial questions of patentability as to each one based on all nine prior art references cited in the reexamination requests. The Patent Office will now apply its expertise to determine the validity of the claims of the patents-in-suit in view of the previously undisclosed prior art references. This process, in fact, is well under way as the Patent Office already has issued its first Office Action rejecting all thirty claims of the '791 patent. To avoid unnecessarily wasting the resources of the Court and the parties, T&B respectfully moves for an order staying the above-captioned proceeding pending disposition of the Patent Office's reexamination proceedings.

Entry of a stay is appropriate at this time as this case is in its earliest stages. The parties have served only their initial pleadings and have not propounded any discovery. Indeed, the Court has not yet even docketed the initial scheduling conference for the case. The requested stay will simplify the litigation as it will permit discovery, claim construction, expert opinions and trial to focus on claims in the form in which they actually emerge from the Patent Office, if they emerge at all. Modification or cancellation of the claims would substantially alter the issues involved in this litigation. Absent a stay, the Court and the parties unnecessarily would expend resources litigating claims that the Patent Office almost certainly will cancel or modify. Plaintiff Cooper Technologies, Inc. ("Cooper") will not suffer prejudice due to entry of a stay but instead will benefit. Because the Patent Office already has concluded that there exist substantial questions of patentability with regard to the patents-in-suit, it is in Cooper's interest, just as it is

in T&B and the Court's interest, to clarify Cooper's patent rights prior to embarking down the road of expensive and time consuming litigation.

## FACTUAL BACKGROUND

### A.      Status Of The Instant Litigation

Although Cooper filed its original complaint initiating this action on June 14, 2006, Cooper did not serve T&B until October 11, 2006.[1]  T&B answered on December 8, 2006 asserting by way of affirmative defense that it did not infringe the '103 and '791 patents and that both patents are invalid.  T&B further asserted counterclaims of patent noninfringement and patent invalidity.  (Docket No. 8, T&B's Answer and Counterclaims.)  Both of T&B's counterclaims directly concern the interpretation and validity of the claims of the '103 and '791 patents.[2]  Cooper replied to T&B's counterclaims on January 4, 2007.  (Docket No. 19, Cooper's Answer to T&B's Counterclaims.)  The Court has not docketed an initialing scheduling conference or entered a docket order control.  The parties have not engaged in any fact or expert discovery, or commenced any claim construction proceedings.  In short, other than service of the parties' initial pleadings, nothing has occurred in the litigation.

### B.      Commencement of Patent Office Reexamination Proceedings

On December 21, 2006, T&B petitioned the Patent Office for *ex parte* reexamination of the '103 patent pursuant to 37 C.F.R. § 1.510 and for *inter partes* reexamination of the '791 patent pursuant to 37 C.F.R. § 1.915.  Each Request for Reexamination is based on nine prior art references that individually or in combination invalidate all claims of the '103 and '791 patents.  On March 15 and April 13**,** 2007, the Patent Office granted T&B's requests for reexamination of

---

[1] Cooper never served the original Complaint on T&B, but served T&B with its Amended Complaint, which Cooper filed on October 5, 2006.

[2] T&B alleged in its noninfringement counterclaim that it had not infringed, contributed to the infringement of, or induced the infringement of, any claims of the patents-in-suit.  (T&B's Answer and Counterclaims at 5.)  In its invalidity counterclaim, T&B alleged that the '103 and '791 patents are invalid for failure to comply with one or more requirements of Title 35 of the United States Code and/or Section 37 of the Code of Federal Regulations, and the Patent Office's rules, regulations, laws and procedures.  (*Id.*)

the '103 and '791 patents, respectively.  (Decisions Granting Request for Reexamination attached as Exhibits A and B.)

The '103 and '791 patents disclose an electrical connector assembly comprised of an electrical terminator component and a bushing insert component.  As the Patent Office observed, the "critical feature" of the patents are the "use of a color band" or "color indicator" on the bushing plug insert that when "fully covered" provides an indication "that the terminator is positively secured to the [bushing plug insert] tongue."  (*See e.g.*, Exhibit A, Decision at 4-5.) Figures 5 and 6 from the '103 and '791 patents as depicted in the Patent Office's Decisions on Reexamination are reproduced below, in which element "114" represents the color band/indicator:



(Exhibit A at 5; Exhibit B at 6.)

In concluding that there exists a substantial question of patentability, the Patent Office highlighted the existence of color bands or color indicators individually or in combination in all

nine prior art references.  For example, Japanese Patent, JP 63-93081 teaches the addition of a "color band to the shoulder portion of a connection plug."  (Exhibit A at 7; Exhibit B. at 7.)  When the "'front-end of the female connector housing is inserted into the cylindrical fitting part'" the "'colored part is covered by the cylindrical fitting part.'"  (*Id.* (quoting JP 63-930831).)  In another example, a 1967 product manual distributed by RTE Corporation teaches a bushing plug insert "fabricated in two colors" that consists of a "white portion and a dark portion."  (Exhibit A at 11; Exhibit B at 11.)  The manual teaches that for the elbow terminator to be locked in position, the "[e]ntire white portion of the bushing must be covered by the elbow" terminator.  (*Id.*)  Still another reference, the 1987 Demonstration Memorandum, teaches the same concept.  The memorandum recounts the demonstration of a "'bushing insert which was marked with two white bands.  The bands, once covered by the cuff of the elbow would indicate complete elbow/insert seating.'" (Exhibit A at 13 (quoting 1987 Demonstration Memorandum); Exhibit B at 13 (same).)  The other six prior art references disclose electrical connector and bushing plug insert components that similarly utilize color bands and indicators that provide for the visual indication of secure latching of the connector components.

Thus, the prior art references that are subject of the reexamination repeatedly disclose the feature that the Patent Office deems "critical" to patentability.  Accordingly, the Patent Office determined that T&B's request for reexamination of the '103 and '791 patents raised "substantial new questions of patentability" as to all nine prior art references submitted in connection with each reexamination request.  (Exhibit A at 2, 8, 10, 12, 14-18; Exhibit B at 2-3, 8, 10-11, 13, 15, 18-20.)

### C.    Patent Office Rejects All Claims (1 through 30) Of The '791 Patent

In conjunction with its Decision Granting Reexamination of the '791 patent, the Patent Office issued its initial Office Action.  (*See* Exhibit C, Office Action in *Inter Partes* Reexamination.)  In the Office Action, the Patent Office rejected claims 1 through 30 of the '791 patent, constituting rejection of all claims of the patent.  (*Id.* at 1.)  The Patent Office premised

- 4 -

its Office Action on nine separate "categories of rejection" finding that each constitutes a

separate basis for rejection of each and every one of claims 1 through 30 of the '791 patent.  (*Id.*

at 2-3, 7, 20-24.)  The Patent Office has yet to issue its initial Office Action in connection with

the substantially related and overlapping claims involved in the '103 Patent Reexamination.

## ARGUMENT

### I.   LEGAL STANDARDS GOVERNING ENTRY OF STAY PENDING PATENT OFFICE REEXAMINATION OF PATENTS-IN-SUIT

Courts have discretion to stay litigation pending reexamination grounded in their inherent

authority to manage their dockets.  *See Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir.

1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the

authority to order a stay pending conclusion of a PTO reexamination.") (citations omitted);

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005) ("The

district court has the inherent power to control its own docket, including the power to stay

proceedings.").  In fact, "there is a liberal policy in favor of granting motions to stay proceedings

pending the outcome of [Patent Office] reexamination or reissuance proceedings" in furtherance

of judicial efficiency and economy.  *ASCII Corp. v. STD Entm't USA, Inc.* 844 F. Supp. 1378,

1381 (N.D. Cal. 1994).

In determining whether to stay litigation pending reexamination, Courts consider (1)

whether discovery is complete and whether a trial date has been set, (2) whether a stay will

simplify the issues and trial, and (3) whether a stay will unduly prejudice or present a clear

tactical disadvantage to the nonmoving party.  *Echostar Techs. Corp. v. TiVo, Inc.,* No.

5:05cv81, 2006 U.S. Dist. LEXIS 48431, at *12 (E.D. Tex. July 14, 2006); *Soverain Software

LLC*, 356 F. Supp. 2d at 662.  The benefits inherit in a stay of litigation pending the outcome of

the Patent Office's reexamination proceedings are well documented.  Among them:

> 1.   All prior art presented to this Court will have been first considered by the Patent Office, with its particular expertise;

2. Many discovery problems relating to prior art can be alleviated by the Patent Office examination;

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;

4. The outcome of the reexamination may encourage a settlement without the further use of the Court;

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;

6. Issues, defenses and evidence will be more easily limited in pretrial conferences after reexamination; and

7. The cost will likely be reduced both for the parties and the Court.

*Echostar Techs. Corp.*, 2006 U.S. Dist. LEXIS 48431, at *4-*5.  Applying the governing standards,  and assessing the benefits and burdens to the parties, the circumstances of this case overwhelmingly merit imposition of a stay pending reexamination.

## II.   THIS COURT SHOULD EXERCISE ITS INHERENT POWER TO CONTROL ITS DOCKET BY STAYING THIS LITIGATION

This litigation readily meets the standards for entry of a stay pending the Patent Office's reexamination of the patents-in-suit.

### A.   The Fact That This Case Is In Its Infancy Strongly Favors A Stay Pending Reexamination

In light of this litigation's relative infancy, entry of a stay pending reexamination constitutes an appropriate measure to conserve the Court and the parties' resources and allow for the most efficient resolution of the dispute.  "In cases which have not progressed beyond . . . initial litigation stages, the reexamination procedure should be utilized."  *Emhart Indus. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987) (internal citation omitted) (granting motion to stay pending reexamination).  This case has not progressed beyond its initial stages.  As noted above, the parties only recently served their initial pleadings and have yet to commence discovery or claim construction proceedings.  Moreover, at this point, the Court has not even set a date for the initial scheduling conference or set a trial date.  Quite clearly,

therefore, the fact that nothing has occurred in the litigation strongly favors entry of a stay here. *Alza Corp. v. Wyeth and Wyeth Pharm., Inc.*, No. 9:06cv156, 2006 U.S. Dist. LEXIS 94962, at *7 (E.D. Tex. Nov. 2006) (stay granted for case in early stages of litigation; no scheduling conference, discovery or claim construction proceedings had occurred); *Echostar Techs. Corp.*, 2006 U.S. Dist LEXIS 48431, at *7, *10 (stay granted even though plaintiff already had undertaken "extremely burdensome discovery program").[3]  The incipient nature of the instant case, thus, favors entry of a stay.

### B.      Entry Of A Stay Will Simplify Claim Construction, Discovery And Trial

Entry of a stay without question will conserve both the Court's and the parties' resources, as reexamination will simplify claim construction, narrow discovery, and streamline and clarify invalidity and infringement issues for trial.

### 1.      A stay of the litigation will simplify claim construction

Reexaminations lead to cancellation or modification of the overwhelming majority of patent claims.  As such, a stay would simplify the proceedings by allowing the Court to avoid wasting resources construing subsequently modified or cancelled claim terms.  The Patent Office cancels or requires amendments to claims in 74% of the patents it reviews in *ex parte* reexaminations.  (*See* Exhibit D., *Ex Parte* Reexamination Filing Data - March 31, 2007, at 2.)

---

[3] Due to overwhelming benefits of the Patent Office's reexamination on subsequent litigation proceedings, courts have granted stays at much later stages of cases than the initial stage of the litigation at issue here. *See, e.g., Baxa Corp. v. Forhealth Tech., Inc.,* No. 6:06-cv-0353, 2006 U.S. Dist. LEXIS 28583, at *6, *14 (M.D. Fla. May 5, 2006) (granting stay after opening of discovery); *Motson v. Franklin Covey Co.,* No. 03-1067, 2005 U.S. Dist. LEXIS 34067, at *4 (D.N.J. Dec. 16, 2005) (granting stay where "discovery is complete and summary judgment has been decided"); *3M Innovative Props. Co. v. DuPont Dow Elastomers LLC,* No. 03-3364, 2005 U.S. Dist. LEXIS 44877, at *7-*8 (D. Minn. Sept. 8, 2005) (granting stay after discovery completed, claims construed, summary judgment decided and trial date set); *CNS, Inc. v. Silver Eagle Labs, Inc.*, No. 04-968, 2004 U.S. Dist. LEXIS 28960, at *2, *7 (D. Minn. Nov. 29, 2004) (granting stay after start of discovery); *Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344, 1993 U.S. Dist. LEXIS 14601, at *2-3 (N.D. Cal. Jan. 7, 1993) (granting stay after hearing held on defendants' summary judgment motions of invalidity); *Rohm and Haas Co. v. Brotech Corp.*, No. 90-109, 1992 U.S. Dist. LEXIS 3252, at *8, *14 (D. Del. Mar. 11, 1992) (granting stay with less than two months remaining in discovery and trial scheduled in seven months); *GPAC, Inc. v. D.W.W. Enters., Inc.,* 144 F.R.D. 60, 61 & 66 (D.N.J. 1992) (granting stay after written discovery and four depositions); *Robert H. Harris Co., Inc. v. Metal Mfg. Co., Inc.*, No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at *9-*10 (E.D. Ark. June 20, 1991) (granting stay one-month before trial).

In situations where a third party such as T&B requests *ex parte* reexamination, the Patent Office either cancels or requires amendments to claims in 71% of the patents reexamined.  *Id.*  In *inter partes* reexaminations, the Patent Office cancels claims at an even higher rate.  In 86% of *inter partes* reexaminations concluded prior to March 31, 2007, the Patent Office cancelled all the reexamined claims.  (Exhibit E, *Inter Partes* Reexamination Filing Data - March 31, 2007.) Illustrative of this fact, in an *inter partes* reexamination in *May v. Wacoal Am., Inc.*, No. 5:03-CV-160(DF), a similar case in this district, the Patent Office cancelled every claim of the patent. (*See* Exhibit F, Office Action in *Inter Partes* Reexamination at 3.)  The Court conserved valuable judicial resources in that case by entering a stay pending reexamination.  (*See* Exhibit G, *May* Docket No. 127 re Order granting stay.)  Because the Patent Office likely will amend or cancel at least some of the claims of the patents-in-suit, "[i]t would be an egregious waste of both the parties' and the Court's resources if the *Markman* . . . proceedings [and all other aspects of litigation] went forward" prior to completion of the reexamination proceedings.  *Echostar Techs. Corp.*, 2006 U.S. Dist. LEXIS 48431, at *10.

As noted above, the Patent Office already has rejected all claims of the '791 patent.  (*See* Exhibit C, Office Action Rejecting Claims 1-30.)  Even if any claims survive reexamination, however, a stay will allow the full development of the intrinsic evidence prior to commencement of claim construction briefing in this matter.  Cooper's representations to the Patent Office during reexamination proceedings become part of the prosecution history relevant to the interpretation of the patent claims.  *See, e.g., Alza Corp.*, 2006 U.S. Dist. LEXIS 94962, at *6 ("Because statements made during the reexamination proceedings become part of the prosecution history, a stay will allow the intrinsic evidence to be fully developed before the Court begins the claim construction process."); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements made during reexamination "are relevant prosecution history when interpreting claims"); *Hemphill v. Procter & Gamble Co.*, 258 F. Supp. 2d 410, 415 (D. Md. 2003) (same), *aff'd*, 85 F. Appx. 765 (Fed. Cir. 2004).  The Court must consider arguments and amendments made during the prosecution history in order to

- 8 -

"exclude any interpretation" that "the patentee disclaimed during prosecution." *Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1580 (Fed. Cir. 1988)).  Consequently, a stay will simplify claim construction proceedings by clarifying claim scope and obviating the need for the Court to revisit claim construction during or after the development of the prosecution history during reexamination.

### 2.      A stay of the litigation is likely to narrow discovery

Imposing a stay while the Patent Office reexamines the patents-in-suit would narrow discovery, thereby saving the Court and the parties from unnecessary and wasteful effort and expense.  Absent a stay, the parties are likely to conduct unnecessarily burdensome fact and expert discovery on claims that the Patent Office subsequently modifies or cancels.  A stay would allow the parties to avoid costs while the Patent Office clarifies and streamlines the issues for litigation.  *See Guthy-Renker Fitness L.L.C. v. Icon Health and Fitness Inc.*, 48 U.S.P.Q. 2d 1058, 1060 (C.D. Cal. 1998) (noting that absent a stay, the parties "may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination"); *Middleton, Inc., v. 3M Co.,* No. 4:03-CV-40493, 2004 U.S. Dist. LEXIS 16812, at *13 (S.D. Iowa Aug. 24, 2004) ("Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation."); *Alloc Inc. v. Unilin Décor*, No. 03-253, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003) ("[I]t is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation.").  Staying the proceedings until completion of reexamination will allow the parties to conduct discovery with full knowledge of the validity and scope of the claims at issue.

**3.      A stay of the litigation will streamline and clarify
invalidity and infringement issues for trial**

A stay is further justified because the outcome of the reexamination will assist the Court

and the jury in evaluating the validity of the patents-in-suit and determining whether T&B has

infringed the properly construed claims.  The Patent Office's determinations during

reexamination could even eliminate the need for trial of these issues.  Congress designed the

reexamination procedure to streamline and simplify infringement litigation in just this manner.

*See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the

reexamination procedure is to eliminate trial" when claims are canceled "or to facilitate trial"

when a claim survives reexamination by "providing the district court with the expert view" of the

Patent Office.).

A stay will permit the Patent Office to utilize its expertise to evaluate the prior art and

assess the validity of the claims.  Granting a stay thus will "maximize the likelihood that neither

the Court nor the parties expend their assets addressing invalid claims."  *Echostar Techs. Corp.*,

2006 U.S. Dist. LEXIS 48431, at *10.  Even if the Patent Office reaffirms the validity of all

claims as they currently exist, "the Court will then have the benefit of the [Patent Office's]

expert analysis of the prior art that allegedly invalidates or limits the claims."  *Id.* at *11;

*Ethicon, Inc.*, 849 F.2d at 1426 (reexamination process provides efficient and inexpensive

procedure for reviewing validity while utilizing the Patent Office's expertise); *Gould*, 705 F.2d

at 1342 (reexamination provides a district court with the Patent Office's expert view); *GPAC,

Inc.*, 144 F.R.D. at 63 (Patent Office "is in a better position to evaluate" the validity of the

patent-in-suit due to its "technical acumen").

Moreover, the very nature of the *inter partes* reexamination of the '791 patent will

streamline this litigation.  *See Echostar Techs. Corp.*, 2006 U.S. Dist. LEXIS 48431, at *9 ("An

*inter partes* reexamination can have no other effect but to streamline ongoing litigation.")  In an

*inter partes* reexamination, the requester may "file written comments addressing issues raised by

the action of the Office or the patent owner's response thereto."  35 U.S.C. § 314(b)(2).  The

requester may also appeal an adverse decision of the Patent Office to the Federal Circuit, or participate as an appellee should the patentee appeal.  35 U.S.C. § 315(b)(1) & (2).  Most importantly, T&B, as the requester, will be estopped from relitigating in this Court any issue raised during the *inter partes* reexamination.  35 U.S.C. § 315(c).  Because of such estoppel and adversarial participation, this Court has "an even more compelling reason to grant a stay when an *inter partes* reexamination is proceeding." *Echostar Techs. Corp.*, 2006 U.S. Dist. LEXIS 48431, at *9.  Because the same nine prior art references are at issue in the *inter partes* and *ex parte* reexamination, and the claims of the two patents-in-suit are so related that they substantially overlap, this Court should grant a stay as to both patents-in-suit.

## C.    A Stay Of The Litigation Will Not Prejudice Cooper

A stay will not prejudice or tactically disadvantage Cooper.  To date, other than service of the initial pleadings, nothing has occurred in the litigation.  Should the Patent Office invalidate or modify any claim of the patents-in-suit, as is likely, a stay will save *both parties* and *the Court* the expense and burden of litigating issues regarding invalidated or modified claims.  Even in the unlikely event that the patents emerge from reexamination completely unchanged, Cooper will suffer no prejudice.  The applicable damages period is not affected by a stay of litigation and, if Cooper can establish infringement, damages would continue to accrue during the course of the reexamination.  *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) (a plaintiff "may recover damages from those who have infringed" during period of reexamination); *Softview Computer Prods. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 11274, at *10-*11 (S.D.N.Y. Aug. 9, 2000) (granting stay pending reexamination, and rejecting prejudice argument because the accused infringer would be liable for damages if the patent was ultimately found valid and infringed).

Nor has T&B sought reexamination to gain a tactical advantage.  T&B merely is seeking to obtain the Patent Office's expert evaluation of the validity and scope of the '103 and '791 patents in light of the nine, separate prior art references that Cooper did not provide to the Patent

Office during prosecution.  By contrast, if the Court declines to impose a stay, T&B would suffer serious prejudice.  Based on the historical statistics cited *supra*, the Patent Office is likely to cancel, or at the very least modify the claims of the patents-in-suit.  Without a stay, T&B would suffer prejudice by having to expend substantial resources defending against short-lived patent claims.  T&B further would suffer prejudice if made to relitigate validity and infringement issues once the reexamination is complete.  A stay pending reexamination would provide efficiency, rather than prejudice, for both parties.

## CONCLUSION

For the foregoing reasons, T&B respectfully moves this Court to stay this litigation pending disposition of the Patent Office's reexamination of both patents-in-suit.

Respectfully submitted,


/s/ Jason F. Hoffman
Alan M. Fisch
afisch@kayescholer.com
Kelly A. Clement
kclement@kayescholer.com
Jason F. Hoffman
jahoffman@kayescholer.com
R. William Sigler
bsigler@kayescholer.com
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile

Samuel F. Baxter
MCKOOL SMITH, P.C.
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 E. Travis, Suite 105
Marshall, Texas  75670
(903) 927-2111 telephone
(903) 927-2622 facsimile

Attorneys for Thomas & Betts Corporation

Dated: April 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on April 19, 2007, with the Clerk of the Court for the Eastern District of Texas via the CM/ECF system.  This system will send notice of filing to the individuals listed below:

Robert Stanford Harrell
Fulbright & Jaworski - Houston
1301 McKinney
Suite 5100
Houston, TX  77010

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703

Attorneys for Cooper Technologies, Inc.


_____/s/Jason F. Hoffman_____