IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

COOPER TECHNOLOGIES, INC.,

    Plaintiff,

    v.                                             Civil Case No. 2:06-CV-242

THOMAS & BETTS CORPORATION,

    Defendant.

**THOMAS & BETTS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENTS-IN-SUIT**

Alan M. Fisch
afisch@kayescholer.com
Kelly A. Clement
kclement@kayescholer.com
Jason F. Hoffman
jahoffman@kayescholer.com
R. William Sigler
bsigler@kayescholer.com
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile

Samuel F. Baxter
MCKOOL SMITH, P.C.
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 E. Travis, Suite 105
P.O. Box O
Marshall, Texas  75670
(903) 927-2111 telephone

Dated: May 16, 2007                           Attorneys for Thomas & Betts Corporation

Defendant Thomas & Betts Corporation ("T&B") submits this reply memorandum in support of its motion to stay this litigation pending the United States Patent & Trademark Office's ("Patent Office") reexamination of the patents-in-suit.

## PRELIMINARY STATEMENT

The arguments that Cooper Technologies, Inc. ("Cooper") advances in opposition to T&B's motion to stay this litigation do not come close to meeting Cooper's burden to establish that a stay does not serve the interests of justice. Cooper's opposition weakly contends that (a) the reexamination proceedings constitute a "dilatory tactic," (b) a stay of the litigation would harm Cooper, and (c) a stay is not warranted because the Patent Office has misinterpreted the Patent Act in instituting the *inter partes* reexamination. Cooper's opposition arguments are utterly lacking merit.

There is nothing dilatory about T&B following Congress's directive in requesting that the Patent Office apply its expertise to reexamine the validity of the patents-in-suit in light of prior art that, notably, Cooper did not disclose during prosecution of the patents. Moreover, Congress has determined rightly that a stay of litigation pending disposition of reexamination proceedings presumptively constitutes the most efficient and orderly manner in which to manage co-pending litigation and reexamination proceedings. Once the Patent Office cancels, modifies or affirms the claims of the patents-in-suit, the parties then can focus the litigation on the clarified claims, to the extent litigation remains a viable option.

Cooper's assertion of harm resulting from the requested stay is equally specious. Monetary harm, *i.e.*, continued accrual of damages, if warranted, is fully compensable at the end of the case should the Court grant the stay. Non-monetary harm is nonexistent. Cooper claims harm to its ability to license the patents-in-suit but neglects to inform the Court that the only manufacturers of allegedly infringing products are Hubbell, Inc., with whom Cooper already reached settlement, and T&B. There are no other manufacturers to license. Even if there were, Cooper's difficulty in licensing the patents-in-suit is not due to a stay of litigation, but rather to

the fact that both patents are undergoing reexamination by the Patent Office, which already has rejected all claims of one of the patents-in-suit. Denying the stay will not alleviate this problem for Cooper or otherwise enhance Cooper's ability to license patents that are on the verge of being invalidated.

Finally, Cooper's baseless contention that the Patent Office lacked authority to institute the *inter partes* reexamination proceeding is an issue for the U.S. District Court for the Eastern District of Virginia, where Cooper has filed a Complaint, and not an issue for this action. Nonetheless, the basis for Cooper's Complaint is frivolous. The '791 patent, which issued from a continuation application, is properly deemed an "original application" subject to *inter partes* reexamination proceedings. For nearly twenty-five years the Patent Office formally has defined continuation applications to constitute "original applications." Congress drafted legislation authorizing *inter partes* reexaminations of original applications filed after November 29, 1999, with full knowledge of the Patent Office's definition. For Cooper now to argue that a continuation application does not constitute an "original application" constitutes wishful thinking, at best. Certainly, such an untenable position can provide no basis to deny T&B's motion to stay.

## I.   REEXAMINATION IS NOT A DILATORY TACTIC

Cooper asserts that T&B's motion to stay constitutes a "dilatory tactic" based on the erroneous assertion that T&B delayed four years in filing for reexamination of the '103 and '791 patents. (Cooper Opp. at 3.[1]) In fact, however, T&B acted with diligence in seeking reexamination in the immediate wake of Cooper's commencement of enforcement efforts.

Prior to instituting the instant action, Cooper had never sought to enforce the patents-in-suit against T&B. Although Cooper notified T&B of the '103 patent in February 2003 and, at that time, sought to negotiate a license, Cooper did not seek to enforce the '103 patent against

---

[1] Citations to "Cooper Opp." herein refer to Cooper's Memorandum in Opposition to T&B's Motion to Stay Litigation Pending Reexamination of the Patents-in-suit, Docket No. 21.

T&B until just recently by commencing the instant litigation.  For its part, the '791 patent did not issue until January 10, 2006.  T&B, quite obviously, had no interest in expending its resources to seek reexamination of patents of dubious validity that Cooper had not sought to enforce.

Once Cooper initiated enforcement proceedings, T&B sought to have Cooper withdraw its Complaint or face Patent Office reexamination of its patents in light of invalidating prior art. (*See* Ex. H, Oct 2., 2006 Letter from M. Stoessl to C. Hartmann at 1.)  Discussions between the parties regarding settlement of the suit ceased December 12, 2006.  Nine days later, on December 21, 2006, T&B filed its requests for reexamination of the '103 and '791 patents. (*See* Ex. I, Dec. 21, 2006 Reexamination Transmittal Letters to the Patent Office.)  Accordingly, T&B filed its requests for reexamination just two months after Cooper served its Complaint, and just nine days after Cooper affirmed that it actually would seek to enforce the invalid patents-in-suit, not four years as Cooper misleadingly represents.

Significantly, in cases involving *inter partes* reexaminations of asserted patents, Congress has shifted the burden to the patent holder to establish that a stay of the litigation "would not serve the interests of justice."  *See* 35 U.S.C. § 318.  Here, Cooper has not met its burden to show that a stay would not serve the interests of justice.  All work this Court performs in construing the patents-in-suit and addressing summary judgment issues, and the work that the parties and the experts perform in preparing for trial, as well as the jury's efforts at trial, likely will be wasted should this litigation continue during the pendency of the reexamination.

**II.     COOPER'S PURPORTED HARM DOES NOT JUSTIFY DENIAL OF THE STAY**

Cooper's assertion that it will suffer harm if the Court delays these proceedings (Cooper Opp. at 4) is misplaced as the significant and Congressionally-endorsed efficiencies resulting from reexamination clearly outweigh the purported harm Cooper has identified.  A stay will permit the Patent Office to streamline resolution of this matter for all parties by allowing the Patent Office to apply its specialized expertise to assess the validity of the patents-in-suit in light of the nine prior art references that the Patent Office already has determined raise substantial

new questions of patentability.  *See Broadcast Innovation, LLC v. Charter Commc'ns., Inc.*, No. 03-cv-2223, 2006 U.S. Dist. LEXIS 46623, at *9 (D. Col. July 11, 2006) (granting the defendant's motion to stay and citing "Congress's intention of utilizing the PTO's specialized expertise to reduce costly . . . litigation."); *Teradyne, Inc. v. Hewlett-Packard Co.*, 1993 U.S. Dist. LEXIS 14601, at *26 (N.D. Cal. Jan. 7, 1993) (staying the litigation "so that the court can take advantage of the Patent Office's expertise.").  Moreover, a stay will preclude the parties and this Court from wasting resources by engaging in claim construction, fact and expert discovery and trial regarding claims that likely will be modified or cancelled by the Patent Office.  This efficiency is particularly relevant here, as the Patent Office already has rejected all claims of the '791 patent.  (*See* Ex. C to Docket No. 20.)

Balanced against these efficiencies are the particular types of harm Cooper cites, which are specious at best.  (Cooper Opp. at 4-5.)  Cooper will suffer no monetary harm as a result of a stay.  Any damages due Cooper from T&B for infringement will continue to accrue during the stay and are fully compensable, with interest, at the disposition of this litigation.  *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985).  It is unlikely, however, that Cooper will be entitled to any historical damages as cancellation or any material modification of the asserted claims will eliminate Cooper's ability to recover such damages.  *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate.").  Cooper also contends that a stay will impede its ability to license its patents.  To the contrary, a stay would have no impact on Cooper's ability to license.  Cooper, T&B, and Hubbell, Inc. supply the market with nearly all the products Cooper alleges are covered by the patents-in-suit, and Cooper already sued and reached a settlement agreement with Hubbell.  (*See also* Cooper Opp. at 5 (admitting that "the relevant market is very narrow, with only a small number of suppliers").)  Thus, with only T&B as a potential licensee, a stay would not cause Cooper any harm in non-existent licensing negotiations.  The more significant issue for Cooper is that no one will take a license for patents undergoing

reexamination and on the brink of invalidity.  Finally, any harm stemming from the memories of witnesses fading is a problem of Cooper's own making as, even by its own admission, it sought to license T&B in 2003, but took no enforcement action until 2006.  After its lengthy delay in enforcing its patent rights, Cooper now cannot claim prejudice from its own delay.

### III.   COOPER'S EFFORT TO OVERTURN THE REEXAMINATION RULES PROVIDES NO BASIS TO DENY THE STAY

Cooper's effort to overturn the Patent Office's rules for *inter partes* reexamination is doomed to failure and, in any case, provides no basis to avoid a stay.  (Cooper Opp. at 8.) Cooper's challenge to the Patent Office's rules is flat wrong and bound for summary disposition. Congress used the Patent Office's definition of "original application" as including a "continuation application" that has been in place since 1983 as the basis for the term "original application" in the statute authorizing *inter partes* reexaminations.  (*See* Ex. J, Manual of Patent Examination Procedure (MPEP) § 201.04(a) (August 1983).)  Accordingly, continuation applications filed after November 29, 1999 properly are subject to *inter partes* reexamination. *See* 35 U.S.C. § 311.  Even so, both patents-in-suit are actively undergoing reexamination, and, as such, a stay is warranted notwithstanding Cooper's collateral effort to stop the Patent Office from performing its duties.[2]

### CONCLUSION

For the foregoing reasons, T&B respectfully moves this Court to stay this litigation pending disposition of the Patent Office's reexamination of the patents-in-suit.

---

[2] Cooper's contention that a stay would waste resources because the Patent Office can suspend the *inter partes* reexamination of the '791 patent for "good cause" in favor of completion of the district court litigation is wholly irrelevant. (Cooper Opp. at 7.)  It is doubtful that Cooper could ever meet the "good cause" standard because the reexamination is significantly ahead of this litigation as the Patent Office already has rejected all claims of the '791 patent.  Moreover, contrary to Cooper's representation, the evidence necessary to resolve the reexamination is not dependent on discovery.  For example, the invalidating prior art references include an issued patent and two product manuals, including one from Cooper's own subsidiary RTE, that plainly depict all the elements of the '103 and '791 patents. (Ex. B to Docket No. 20, Order Granting Request for Reexamination at 2-3.)  No discovery or declarations are necessary for the Patent Office to invalidate the '103 and '791 patents based on these strong, unequivocal public references.  In the unlikely event Cooper ever successfully convinces the Patent Office to stay the *inter partes* reexamination, Cooper then can move this Court to lift the stay and recommence the litigation.  Until such time, however, the requested stay is appropriate.

Respectfully submitted,


/s/ Jason F. Hoffman
Alan M. Fisch
afisch@kayescholer.com
Kelly A. Clement
kclement@kayescholer.com
Jason F. Hoffman
jahoffman@kayescholer.com
R. William Sigler
bsigler@kayescholer.com
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C.  20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile

Samuel F. Baxter
MCKOOL SMITH, P.C.
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
505 E. Travis, Suite 105
P.O. Box O
Marshall, Texas  75670
(903) 927-2111 telephone
(903) 927-2622 facsimile

Dated: May 16, 2007

Attorneys for Thomas & Betts Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on May 16, 2007, with the Clerk of the Court for the Eastern District of Texas via the CM/ECF system.  This system will send notice of filing to the individuals listed below:

>Robert Stanford Harrell
>FULBRIGHT & JAWORSKI
>1301 McKinney
>Suite 5100
>Houston, TX  77010
>
>Otis Carroll
>IRELAND, CARROLL & KELLEY, P.C.
>6101 S. Broadway, Suite 500
>Tyler, Texas 75703
>
>Attorneys for Cooper Technologies, Inc.

    /s/  Jason F. Hoffman